**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ERNESTINA CRUZ, *as personal
representative of the Estate of Gilbert
Valencia* and G.R.V., *a minor, through
next friend* Marianna Wheeler,

       Plaintiffs,

v.                                No. 2:22-cv-00957-MIS-GJF

CITY OF DEMING, *et al.*,

       Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING NEW MEXICO DEPARTMENT OF PUBLIC SAFETY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT NO. I: DISMISSAL OF NEGLIGENCE
RESULTING IN ASSAULT AND BATTERY AND WRONGFUL DEATH CLAIM AND
GRANTING NEW MEXICO DEPARTMENT OF PUBLIC SAFETY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT NO. II: DISMISSAL OF NEGLIGENT TRAINING
AND SUPERVISION CLAIM**

      **THIS MATTER** is before the Court on Defendant New Mexico Department of Public

Safety's Motion for Partial Summary Judgment No. I: Dismissal of Negligence Resulting in

Assault and Battery and Wrongful Death Claim ("First Motion for Partial Summary Judgment"),

ECF No. 28, and Defendant New Mexico Department of Public Safety's Motion for Partial

Summary Judgment No. II: Dismissal of Negligent Training and Supervision Claim ("Second

Motion for Partial Summary Judgment"), ECF No. 29.  Plaintiff Ernestina Cruz as personal

representative of the estate of Gilbert Valencia and Marianna Wheeler on behalf of G.R.V.

(collectively "Plaintiffs"), responded and Defendant New Mexico Department of Public Safety

(NMDPS) replied.  ECF Nos. 39-41, 43.  Upon due consideration of the parties' submissions, the

record, and the relevant law, the Court will **GRANT** the Motions.

## I.     FACTUAL BACKGROUND

This case arises from the shooting death of Gilbert Valencia at the hands of police officers from the Deming Police Department during an encounter between Mr. Valencia and law enforcement officers from the Deming Police Department, Luna County Sheriff's Department, and New Mexico State Police ("NMSP").  See generally ECF No. 1-1.  The facts below are undisputed and stated in the light most favorable to Plaintiffs for purposes of the present motion:[1]

### A.     Actions of Sergeant Madrid on February 3, 2021

At all relevant times, New Mexico State Police Sergeant Mark Madrid was a law enforcement officer employed by NMSP.  See Defendant New Mexico Department of Public Safety's Statement of Undisputed Material Facts ("DUMF") 5, 8; ECF No. 39 ¶¶ 5, 8.[2]  On February 3, 2021, the date Mr. Valencia was killed, Sergeant Madrid was supervising NMSP Officers Andy Parra and Darrian Jarrott.  Plaintiffs' Additional Statement of Facts ("PUMF") ¶ M; ECF No. 41 ¶ M.  Sergeant Madrid heard radio dispatch report that a male subject was in the center median of Interstate 10, near milepost 82, shooting at passing vehicles.  DUMF 8; ECF No. 39 ¶ 8.  Sergeant Madrid traveled to milepost 82 and met with officers Parra and Jarrott.  DUMF 9; ECF No. 39 ¶ 9.  Together, Sergeant Madrid and the other NMSP officers walked into the desert

---

[1] Per Local Rule 56.1(b), all material facts set forth in the motion for summary judgment and response will be deemed undisputed unless specifically controverted, including those facts to which Plaintiffs have responded with the statement that they "do not have enough information to dispute or not dispute this fact."  D.N.M.LR-Civ. 56.1(b) (stating that "[a]ll material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted); Aguilar v. Las Cumbres Learning, Inc., No. Civ 06-1100 JB/WDS, 2008 WL 4107137, at *21 (D.N.M. Apr. 26, 2008) (stating that a non-movant's response that she was unaware whether a fact was true was insufficient to create a genuine dispute as to that fact at the summary judgment stage).

[2] In their response briefs to Defendant NMDPS's First and Second Motions for Partial Summary Judgment, Plaintiffs number their responses to Defendant NMDPS's statements of undisputed material facts and also number their own proposed additional material facts.  For the sake of clarity and consistent with Local Rule of Civil Procedure 56.1(b), the Court retains Plaintiffs' numbering to identify Plaintiff's responses to Defendant NMDPS's proposed undisputed facts but uses lettering to distinguish Plaintiffs' proposed additional facts (i.e., the proposed fact previously designated additional fact 1 will now be ¶ A, proposed additional fact 2 will now be ¶ B, and so on).  See D.N.M.LR-Civ. 56.1(b).

adjoining the north side of Interstate 10 and ultimately met a law enforcement officer from the Deming Police Department.  Id.  The Deming Police Department officer told the NMSP officers about a cell phone the Deming Police Department officer had found on the ground.  DUMF 10; ECF No. 39 ¶ 10.  Sergeant Madrid did not know whether the cell phone had any connection to the male subject the officers were looking for, but he volunteered to stay with the cell phone while the other officers continued to search for the suspect.  Id.; DUMF 11; PUMF Q; ECF No. 41 ¶ Q.  "A short time later," Sergeant Madrid heard multiple gunshots and decided to leave the cell phone to see if his assistance was needed.  DUMF 12.  When Sergeant Madrid arrived at the area where Gilbert Valencia had been killed, he secured the scene with crime tape and directed another NMSP officer to start a crime scene log.  DUMFs 1, 13; ECF No. 39 ¶¶ 1, 13.

**B.** **April 6, 2021, Tort Claims Act Notice and Institutional History of NMDPS**

On April 6, 2021, the State of New Mexico's Risk Management Division received a Tort Claims Act notice from the Estate of Gilbert Valencia informing it that the State of New Mexico; the NMSP; and agents, employees, or contractors of the NMSP may be subjects of a lawsuit.  ECF No. 28 ¶ 2; ECF No. 28-1; ECF No. 39 ¶ 2.  The New Mexico Department of Public Safety (NMDPS), which was not explicitly named in the Tort Claims Act Notice, id., is "responsible for statewide law enforcement services [and] training," PUMF E; ECF No. 41 ¶ E.  The NMDPS was formed in 1986 by the unification of the "formerly independent" NMSP with other state departments into a single entity.  PUMF B (quoting Department of Public Safety, About the Department, https://www.nm.gov/departments-and-agencies/department-of-public-safety/ (last visited November 2, 2023)); ECF No. 41 ¶ B.  NMSP is now a division of NMDPS.  See PUMF F; ECF No. 41 ¶ F.

## II.      PROCEDURAL BACKGROUND

Plaintiffs filed the operative First Amended Complaint for Civil Rights Violations, Violations of the Americans with Disabilities Act (ADA), Assault, Battery, and Negligent Training and Supervision Resulting in the Wrongful Death of Gilbert Valencia ("Amended Complaint"), ECF No. 1-1, on December 15, 2022.  Defendants City of Deming, Lee Cook Jordan, Sergio Quezada, Cristobal Paz, Adam Aragon, Robert Chavez, Benjamin Sanchez, David Acosta, and Ashley Standridge removed this proceeding to federal court on December 16, 2022.  ECF No. 1. Relevant here, the Amended Complaint brings claims against Defendant NMDPS for: (1) negligence resulting in assault and battery and wrongful death based on the actions/inactions of New Mexico State Police Sergeant Mark Madrid[3] ("Count II") and (2) negligent training, supervision, and retention based on Defendant NMDPS's alleged failure to train and supervise Sergeant Madrid ("Count III").  ECF No. 1-1 ¶¶ 111-119, 132-33, 136, 138-39.  On April 10, 2023, Defendant NMDPS filed the instant First Motion for Partial Summary Judgment and Second Motion for Partial Summary Judgment, arguing that Counts II and III of the Amended Complaint should be dismissed as a matter of law.  ECF Nos. 28, 29.  Plaintiffs filed their responses on May 22, 2023.  ECF Nos. 39, 40.  The motions were fully briefed on May 31, 2023, see ECF Nos. 42, 44, with the filing of Defendant NMDPS's replies, ECF Nos. 41, 43.

## III.     LEGAL STANDARD

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits or declarations show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c).  "[A] party seeking summary

---

[3] Although paragraph 112 of the Amended Complaint identifies Sergeant Madrid as a "Defendant," the Amended Complaint neither names Sergeant Madrid as a party Defendant nor includes him as a Defendant in its caption.  See ECF No. 1-1 at 1, ¶¶ 1-14, 112.

judgment always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, the non-movant must put in the record facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–52 (1986).  A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim. Id. at 248.  And a dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the non-moving party. Id.

The non-moving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 649 (10th Cir. 1988).  Rather, the non-movant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [their] case in order to survive summary judgment." Johnson v. Mullin, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998)).

It is not a court's role to weigh the evidence or assess the credibility of witnesses in ruling on a motion for summary judgment. Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 627 (10th Cir. 2012).  Rather, the court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the non-movant, and draws all reasonable inferences in favor of the non-movant. See Hunt v. Cromartie, 526 U.S. 541, 551–52 (1999); Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005).

**IV.     DISCUSSION**

In its First and Second Motions for Partial Summary Judgment, Defendant NMDPS argues that Plaintiffs' claims against it in Counts II and III of the Amended Complaint are subject to dismissal due to Plaintiffs' failure to satisfy the New Mexico Tort Claims Act's ("NMTCA") notice requirement.  <u>See</u> N.M. Stat. Ann. § 41-4-16 (1978).  Specifically, Defendant NMDPS argues that it neither had actual notice nor received written notice of Plaintiffs' claims against it before Plaintiffs filed the instant lawsuit.  ECF No. 28 at 8-11; ECF No. 29 at 8 n.2.  Because the issue of whether Plaintiffs satisfied the NMTCA's notice requirements as to Defendant NMDPS is a threshold issue, the Court begins by addressing the sufficiency of Plaintiffs' Tort Claims Act notice before turning to Defendant NMDPS's arguments about liability.  <u>See</u> <u>Galvan v. Bd. of Cnty. Comm'rs for Curry Cnty.</u>, 261 F. Supp. 3d 1140, 1144 (D.N.M. 2017) ("[B]ecause under Section 41–4–16(B) actual notice is a jurisdictional question and separate from the ultimate issue of liability, whether the facts give rise to a reasonable inference that a claim may be filed is a threshold inquiry to be resolved by the court." (quoting <u>Lopez v. State</u>, 930 P.2d 146, 151 (N.M. 1996))).

**A.     Notice Under the NMTCA**

Under the New Mexico Tort Claims Act, claimants ordinarily must submit notice of their claims to an appropriate government official within 90 days of the alleged tort:

>  Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause to be presented to the risk management division for claims against the state . . . , within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.

N.M. Stat. Ann. § 41-4-16(A).  If the alleged tort is wrongful death, the time period for notice is extended to six months.  <u>Id.</u> § 41-4-16(C).  The notice requirement contained in Section 41-4-16

"ensure[s] that the [government entity] allegedly at fault is notified that it may be subject to a lawsuit," <u>N.M. State Highway Comm'n v. Ferguson</u>, 652 P.2d 230, 231 (N.M. 1982), thereby permitting it "to protect itself against false or exaggerated claims while also permitting it to identify and settle meritorious claims," <u>Lopez</u>, 930 P.2d at 149.  The notice must be directed at "the particular agency that caused the alleged harm." <u>Powell v. N.M. State Highway & Transp. Dep't</u>, 872 P.2d 388, 391 (N.M. Ct. App. 1994) (quoting, <u>inter alia</u>, <u>Ferguson</u>, 652 P.2d at 231).  "The purpose of the [Tort Claims Act] notice requirement is well established: '(1) to enable the person or entity to whom notice must be given, or its insurance company, to investigate the matter while the facts are accessible; (2) to question witnesses; (3) to protect against simulated or aggravated claims; and (4) to consider whether to pay the claim or to refuse it.'" <u>Martens v. City of Albuquerque</u>, 531 P.3d 607, 609 (N.M. Ct. App. 2023) (quoting <u>Ferguson v. N.M. State Highway Comm'n</u>, 656 P.2d 244, 246 (N.M. Ct. App. 1982)), <u>cert. granted</u>, (May 31, 2023).

When the notice requirement is not satisfied, a court lacks jurisdiction over the subsequent proceedings, unless the state entity had actual notice of the occurrence giving rise to the alleged tort. <u>See</u> N.M. Stat. Ann. § 41-4-16(B).  "Actual notice" requires more than an awareness that the events underlying a claim occurred; for an entity to have "actual notice," it must both be aware of the underlying events and be on notice that there is a claim against it. <u>See</u> <u>Powell</u>, 872 P.2d at 391; <u>Ganley v. Jojola</u>, 402 F. Supp. 3d 1021, 1075 (D.N.M. 2019) (stating that "[m]ere awareness [of] an accident involving a state employee is insufficient to put a governmental entity on notice under § 41-4-16(A)").  Procedurally, defendants bear the burden of proving that the Tort Claims Act's notice requirement was not met. <u>Dutton v. McKinley Cnty. Bd. of Comm'rs</u>, 822 P.2d 1134, 1135 (N.M. Ct. App. 1991) (citing <u>Ferguson</u>, 652 P.2d at 742).

Here, Defendant NMDPS challenges the sufficiency, rather than the timeliness, of Plaintiffs' Tort Claims Act notice.  On April 6, 2021—less than 90 days after Mr. Valencia's death on February 3, 2021—the State of New Mexico's Risk Management Division received a notice from Mr. Valencia's estate informing it that the State of New Mexico; the New Mexico State Police; and agents, employees, or contractors of the New Mexico State Police were subject to suit based on Mr. Valencia's death.  DUMFs 1-2; ECF No. 39 ¶¶ 1-2; see also ECF No. 28-1. Defendant NMDPS argues that Plaintiffs' April 6, 2021, notice fell short of Section 41-4-16's written notice requirement because it did not explicitly mention NMDPS as an entity that might be sued.  ECF No. 28 at 8-10 (stating that Plaintiffs' tort claim notice "listed only the State of New Mexico and NMSP and its agents, employees, and contractors as potential subjects of legal action").  In addition, Defendant NMDPS argues that it lacked actual notice that it might be subject to suit because, "[e]ven if NMDPS was aware of the officer-involved shooting that led to Mr. Valencia's death, . . . NMDPS would have no reason to suspect that it could be subjected to litigation stemming from the incident" since Sergeant Madrid and the unnamed NMSP officers named in Plaintiffs' Amended Complaint were employed by NMSP rather than NMDPS.  Id. at 10-11.

The Court is not persuaded that Defendant NMDPS has carried its burden of showing that the April 6, 2021, notice was insufficient.  Although it is true that Plaintiffs' Tort Claims Act notice did not explicitly list NMDPS as an entity that might be sued based on Mr. Valencia's death, the notice did explicitly list NMSP, which is a subdivision of NMDPS.  PUMF F; ECF No. 41 ¶ F. The Court entertains doubts about the validity of the general proposition that notice to an agency subdivision is insufficient to put the agency as a whole on notice that it might be sued, and Defendant NMDPS does not cite any case law on this specific point.  See Powell, 872 P.2d at 391

("The purpose of the notice provision is to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit.") (emphasis added) (quoting, inter alia, Ferguson, 652 P.2d at 231). And, the Court entertains even greater doubts as to the validity of that proposition as applied to the present case. Defendant NMDPS self-describes as a "single unified entity" that was formed with the aggregation of "*inter alia*, the formerly independent [NMSP] and the New Mexico Law Enforcement Academy" and is now responsible for law enforcement services and training in the state of New Mexico. PUMFs A-B, E; ECF No. 41 ¶¶ A-B, E. Given the purview of NMDPS's institutional responsibilities, the fact that NMSP is a subdivision of NMDPS, and the fact that Defendant NMDPS acknowledges that NMSP is no longer an independent entity, the Court struggles to accept that any investigation undertaken by NMSP after its receipt of Plaintiffs' April 6, 2021, notice cannot be imputed to NMDPS. Therefore, keeping in mind that the purpose of the NMTCA's notice requirement is to permit government entities potentially subject to suit to investigate the claims against them, the Court finds that Defendant NMDPS has not carried its burden of showing that the April 6, 2021, notice provided neither sufficient written notice nor actual notice of Plaintiffs' claims against NMDPS.

Having concluded that it has jurisdiction to consider the merits of Plaintiff's claims against Defendant NMDPS in Counts II and III, the Court turns to Defendant NMDPS's remaining arguments, which concern liability. The Court begins with Defendant NMDPS's First Motion for Partial Summary Judgment, which addresses Count II, before turning to Defendant NMDPS's Second Motion for Partial Summary Judgment, which addresses Count III.

### B.    Negligence Resulting in Assault and Battery and Wrongful Death (Count II)

As discussed, in Count II, Plaintiffs allege Defendant NMDPS is liable to Plaintiffs under a respondeat superior theory for the negligence of New Mexico Police Sergeant Mark Madrid, who

Plaintiffs allege was an agent and employee of the New Mexico Department of Public Safety acting within the scope of his employment at all relevant times.  ECF No. 1-1 at ¶¶ 118-19.  Specifically, Plaintiffs allege Sergeant Madrid had a duty to "critically evaluate the facts and take the appropriate actions necessary to ensure that any potential confrontation with Gilbert Valencia would not result in his . . . killing," and that Madrid breached that duty by "failing to take any form of action that would have avoided a deadly confrontation with a mentally ill person like Gilbert Valencia."  Id. ¶¶ 113-14.  Defendant NMDPS argues that Plaintiffs' claim against NMDPS in Count II fails as a matter of law because: (1) it did not have immediate supervisory responsibility over Sergeant Madrid, and (2) Sergeant Madrid was not negligent.  ECF No. 28 at 11-15.  In response, Plaintiffs argue that: (1) a sufficient supervisory connection existed between Sergeant Madrid and Defendant NMDPS because Madrid was an employee of the New Mexico Department of Public Safety by virtue of being an employee of the New Mexico State Police, and (2) summary judgment is premature on the question of whether Sergeant Madrid was negligent because, by volunteering to watch a cell phone that was found by the responding officers during the search that preceded officers' confrontation with Mr. Valencia, Sergeant Madrid breached his duty under N.M. Stat. Ann. § 29-1-1 to investigate all violations of state criminal laws brought to his attention. ECF No. 39 at 11-13.  In the alternative, Plaintiffs argue that they should be permitted to conduct additional discovery in order to adequately respond to Defendant NMDPS's First Motion for Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(d)(2).  Id. at 13-14.

### i.    Defendant NMDPS's Supervisory Responsibility for Sergeant Madrid

A governmental entity is vicariously liable "for any tort of its employee acting within the scope of duties for which immunity is waived" under the NMTCA.  Silva v. State, 745 P.2d 380, 385 (N.M. 1987); see also Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't, 916 P.2d

1313, 1318 (N.M. 1996).  Therefore, to plead a claim against a governmental entity in a NMTCA

action, a plaintiff must allege: (1) a liable public employee who falls within one of the NMTCA's

waivers of immunity, and (2) an entity that has immediate supervisory responsibilities over the

employee.  Silva, 745 P.2d at 385 (citing Abalos v. Bernalillo Cnty. Dist. Atty's Off., 734 P.2d

794, 799 (N.M. Ct. App. 1987)).  For purposes of the requirement that the defendant entity have

immediate supervisory responsibilities over a tortfeasor, the requisite supervisory relationship

exists when a government entity defendant either has a legal right to control the tortfeasor's actions

or exercises de facto control over the tortfeasor's actions.  Cal. First Bank v. State, 801 P.2d 646,

651 (N.M. 1990); see also Weinstein, 916 P.2d at 1319-20.

Here, Defendant NMDPS argues that it had neither legal nor de facto control over Sergeant

Madrid and therefore did not have "immediate supervisory responsibilities" as to Sergeant Madrid.

See ECF No. 28 at 12.  Defendant NMDPS argues it lacked legal control over Sergeant Madrid

because he was employed by NMSP rather than NMDPS and lacked de facto control over Sergeant

Madrid because there is no evidence that he was executing a NMDPS policy or directive.  Id.

The Court disagrees that it cannot be genuinely disputed whether Defendant NMDPS had

immediate supervisory control over Sergeant Madrid for purposes of Plaintiffs' respondeat

superior claim.  It is undisputed that Sergeant Madrid was employed by NMSP, see DUMF 5; ECF

No. 39 ¶ 5, but the fact that Sergeant Madrid was employed by NMSP does not foreclose the

possibility that Defendant NMDPS could have had legal or de facto control over his actions, since,

as previously discussed, NMSP is a division of NMDPS, PUMF F; ECF No. 41 ¶ F.  Defendant

NMDPS also argues that the "facts" that "[Sergeant] Madrid was not employed by NMDPS and .

. . NMDPS did not exercise de facto control over [Sergeant] Madrid" are supported by Exhibit 3

to Defendant NMDPS's First Motion for Partial Summary Judgment, which is the New Mexico

State Police Investigations Bureau's third supplemental report concerning the bureau's investigation into the incident giving rise to Plaintiffs' claims.  See ECF No. 28-3.  However, Defendant NMDPS does not direct the Court to any particular portion of the report or make any specific argument concerning why the report establishes that Defendant NMDPS did not have supervisory control over Sergeant Madrid.  See ECF No. 28 at 11-12; ECF No. 41 at 8.  Having reviewed the report, its import with respect to the question of supervisory authority is not immediately clear to the Court.  Therefore, the record before the Court does not establish the lack of a genuine dispute concerning whether Defendant NMDPS had either legal or de facto control over Sergeant Madrid.

        *ii.*       *Negligence of Sergeant Madrid*

As previously stated, a plaintiff brings a respondeat superior claim against a governmental entity in a NMTCA action by alleging that a negligent public employee falls within the scope of one of the NMTCA's immunity waivers and that the government entity defendant held supervisory responsibility with respect to the liable public employee.  Silva, 745 P.2d at 385.  Having found that summary judgment is not appropriate on the issue of whether Defendant NMDPS had supervisory responsibility over Sergeant Madrid, the Court next considers Defendant NMDPS's argument that Sergeant Madrid was not negligent.

Section 41-4-12 of the NMTCA waives liability for:

> personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights, the independent tort of negligent spoliation of evidence or the independent tort of intentional spoliation of evidence . . . caused by law enforcement officers while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12.  Although Section 41-4-12 does not waive liability for direct claims of negligence against law enforcement officers, the New Mexico Supreme Court has held that Section 41-4-12 *does* waive liability for claims alleging that an officer's negligence caused a third party to commit one of the intentional torts listed in Section 41-4-12.  Methola v. Eddy Cnty., 622 P.2d 234, 239 (N.M. 1980); see also Weinstein, 916 P.2d at 1319 (explaining that the NMTCA waives governmental immunity "not only for intentional torts committed by law enforcement officers, but also for acts committed by third parties when caused by the negligence of the officers").  Ordinary negligence principles govern whether a listed tort was "caused" by a law enforcement officer within the meaning of Section 41-4-12.  Salcido v. City of Las Vegas, Civ. No. 21-01222 KG/JHR, 2023 WL 4668995, at *7 (D.N.M. July 20, 2023) (stating that Section 41-4-12's clause "when caused by law enforcement officers" "has the usual meaning of 'proximate cause' as a requirement for liability in an ordinary negligence case." (quoting Schear v. Bd. of Cnty. Comm'rs of Bernalillo Cnty., 687 P.2d 728, 731 (N.M. 1995)).

Under New Mexico law, a negligence claim requires that a plaintiff establish the following elements: (1) the defendant's duty to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) the breach of duty being a proximate cause and cause in fact of the plaintiff's damages. Zamora v. St. Vincent Hosp., 335 P.3d 1243, 1249 (N.M. 2014); Herrera v. Quality Pontiac, 73 P.3d 181, 185 (N.M. 2003).  Although "[n]egligence is generally a question of fact for the jury," "[a] finding of negligence . . . is dependent upon the existence of a duty on the part of the defendant."  Schear, 687 P.2d at 729 (citations omitted).

The existence of a duty is a question of law for the court.  Id.; Weinstein, 916 P.2d at 1319. Under Section 29-1-1, New Mexico law gives law enforcement officers a statutory duty to investigate violations of the criminal law.  N.M. Stat. Ann. § 29-1-1.  Specifically, Section 29-1-1

provides that "[i]t is . . . the duty of every sheriff, deputy sheriff, constable and every other peace officer to investigate all violations of the criminal laws of the state which are called to the attention of any such officer or of which he is aware."  Id.

In its First Motion for Partial Summary Judgment, Defendant NMDPS argues that it is entitled to summary judgment on the basis that Sergeant Madrid did not owe any of the duties alleged by Plaintiffs in their First Amended Complaint, namely, "to critically evaluate the facts and take the appropriate actions necessary to ensure that any potential confrontation with Gilbert Valencia would not result in his . . . killing."  ECF No. 28 at 13; ECF No. 1-1 ¶ 112.  Defendant NMDPS argues that the relevant duty owed by Sergeant Madrid was the duty to investigate set forth in Section 29-1-1, and that Sergeant Madrid discharged that duty by traveling to milepost 82, meeting with NMSP officers, volunteering to safeguard the cell phone found by the Deming officer, and running to the scene of the shooting upon hearing gunfire.  ECF No. 28 at 14-15.  In response, Plaintiffs agree that Section 29-1-1 provides the relevant duty owed by Sergeant Madrid and argue that he breached that duty by electing to remain with the cell phone rather than continuing to search for the suspected active shooter.  ECF No. 39 at 12.  Plaintiffs argue that Sergeant Madrid's duty to investigate required him to "continu[e] in his search for the active shooter . . . and . . . properly supervis[e] those in his charge."  Id.

The Court finds that Defendant NMDPS is entitled to summary judgment because law enforcement officers' duty to investigate under Section 29-1-1 does not include a duty to investigate crimes in any particular manner, and Plaintiff does not argue for any other basis in New Mexico common law or statutory law for such a duty.  The New Mexico Supreme Court has described the general goal of Section 29-1-1 as the "further[ance] [of] public safety by bringing suspected criminals who are already in police custody to justice" by requiring law enforcement

officers "to take steps necessary to prosecute suspected criminals, such as filing complaints against the suspects, bringing them before the courts, and assisting the prosecution." Weinstein, 916 P.2d at 1322.  Additionally, the New Mexico Supreme Court has held that officers breach their statutory duty under Section 29-1-1 when they witness a criminal violation but do not take any steps to apprehend or arrest the person involved in the criminal violation.  For example, in California First Bank v. State, the New Mexico Supreme Court held that sheriff's deputies who had observed an intoxicated man firing several gunshots outside a bar but did not attempt to detain him or conduct an investigation owed a duty under Section 29-1-1 to the victims of a fatal car accident later caused by the intoxicated man that evening.  801 P.2d at 656-57.

However, courts have declined to expand the scope of law enforcement officers' duty to investigate under Section 29-1-1 to prescribe specific methods of investigation or investigative steps.  For instance, in Ruff v. Board of Regents of University of New Mexico, plaintiffs who had been falsely accused and arrested for sexually assaulting another student brought a negligence claim against the officers who investigated them for various shortcomings in the investigation, such as failing to interview witnesses or obtain and review video surveillance footage, and for building a case against the plaintiffs despite knowing that they were innocent.  No. 16-CV-1140 MCA/LF, 2018 WL 565705, at *2, 19 (D.N.M. Jan. 24, 2018).  The Ruff court held that the plaintiffs failed to state a claim, rejecting their argument that Section 29-1-1 creates a duty for law enforcement officers "to establish probable cause prior to falsely arresting, imprisoning, and attempting to secure an indictment" on the basis that such an interpretation of Section 29-1-1 was not supported by the text of Section 29-1-1 itself or relevant case law.  Id. at *20.

Similarly, in Salcido v. City of Las Vegas, the court dismissed the plaintiffs' negligent investigation claim on the basis that Section 29-1-1 does not create a duty to investigate crimes in

any particular manner.  2023 WL 4668995, at *8.  In Salcido, the plaintiffs brought a negligent investigation claim against NMDPS, NMSP, and various New Mexico state police officers based on the officers' alleged failure to take steps to save the life of a woman who was fatally shot by a man who had barricaded himself inside a residence with her while livestreaming the events on Facebook.  2023 WL 4668995, at *7-8.  The Salcido plaintiffs argued that the officers' failure to "develop a reasonable plan and . . . respond and communicate appropriately to the 'dynamic' situation" constituted a breach of the officers' duty to investigate under Section 29-1-1.  Id.  The court rejected that argument, finding that Section 29-1-1 does not confer a duty to investigate crimes in a particular manner and that the "[officers] did investigate the crimes in that they arrested [the suspect] and criminally charged him: plaintiffs have not demonstrated [the officers] had a statutory duty beyond that."  Id. at *9.

The Court finds that the alleged breach of duty here—Sergeant Madrid's decision to watch over a cell phone rather than continue to actively search for the suspect—is more like the alleged breach of duty in Salcido than the one in California First Bank.  Plaintiffs do not dispute that Sergeant Madrid took several actions in response to the reports he received of an active shooter near Interstate 10 on February 3, 2021, for example, by traveling to the reported scene of the incident, meeting other law enforcement officers there, commencing a search for the suspect by walking into the surrounding desert, and later, following the sound of gunfire to see if his assistance was needed.  ECF No. 39 ¶¶ 8-9, 12.  Therefore, unlike the officers in California First Bank, Plaintiff did not wholly fail to respond to suspected criminal activity of which he was aware.  See 801 P.2d at 648.  Instead, Plaintiffs' argument pertains to a decision Sergeant Madrid made during his response to the reported active shooter—namely, his decision to stay with the cell phone.  To the extent Plaintiffs argue Sergeant Madrid breached his duty to investigate under Section 29-1-1

by not conducting his investigation differently, Plaintiffs' argument here is like the one made by the <u>Salcido</u> plaintiffs, who sought to challenge the "defendants' failures to respond better" in that case. <u>See</u> 2023 WL 4668995, at *7. Plaintiffs cite no authority for the proposition that Sergeant Madrid's duty to investigate under Section 29-1-1 required him to have made a different decision about guarding the cell phone than the one he did. Because Section 29-1-1 does not confer a duty on law enforcement officers to investigate in any particular manner, Plaintiffs cannot show that Sergeant Madrid was negligent as a matter of law. And, because Plaintiffs' Count II negligence claim against Defendant NMDPS is founded on Plaintiffs' ability to show that Sergeant Madrid was negligent, Defendant NMDPS is entitled to summary judgment on Plaintiffs' claim against it in Count II.[4]

### C.    Negligent Training and Supervision (Count III)

The Court turns to Defendant NMDPS's Second Motion for Partial Summary Judgment, which addresses Count III. In Count III, Plaintiffs allege Defendant NMDPS has a duty to the public to adequately train and supervise its law enforcement officers in various areas, such as "us[ing] appropriate . . . techniques to prevent injury and death to members of the public," "perform[ing] safe and effective searches," "using effective and reasonable tactical plans and strategies to prevent situations where deadly force is used by officers," and "properly interact[ing] with individuals suffering from mental health issues or experiencing a mental health crisis." ECF

---

[4] The Court notes Plaintiffs' request pursuant to Federal Rule of Civil Procedure 56(d)(2) "that if the Court is not inclined to deny Defendant's motion at this juncture, that Plaintiffs be permitted discovery in this matter to adequately respond to Defendant's motion and purported material facts." ECF No. 39 at 13-14. Rule 56(d)(2) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d)(2). The Court has reviewed the declaration submitted by Plaintiffs' counsel in support of Plaintiffs' request for Rule 56(d) discovery. <u>See</u> ECF No. 39-1. The discovery described therein would not impact the Court's reasoning regarding the scope of the duty to investigate under Section 29-1-1, so Plaintiffs' request for Rule 56(d) discovery is denied.

No. 1-1 ¶ 133.  Plaintiffs further allege that Defendant NMDPS breached its duty by failing to adequately train and supervise Sergeant Madrid to ensure that he took various actions during Mr. Valencia's fatal encounter with law enforcement officers on February 3, 2021, such as "t[aking] command of the scene" and providing oversight to the operation; providing tactical guidance to other law enforcement officers on the scene; and implementing a plan aimed at preventing harm to any members of the public encountered by law enforcement officers through use of de-escalation techniques, clear commands, and less than lethal force.  Id. ¶ 136.

Defendant NMDPS argues that it is entitled to summary judgment on Count III on the basis that there is no immunity waiver in the New Mexico Tort Claims Act applicable to a claim against Defendant NMDPS for negligent training and supervision.  ECF No. 29 at 8-10.  In the alternative, Defendant NMDPS argues that Plaintiffs' negligent training and supervision claim against it is subject to dismissal as a matter of law because it did not owe Mr. Valencia the duties Plaintiffs allege and there is no evidence that Defendant NMDPS breached its duties or that any breach proximately caused Mr. Valencia's injuries.  Id. at 10-12.  For the reasons explained below, the Court agrees that Defendant NMDPS is immune to Plaintiffs' negligent training and supervision claim under the NMTCA.  The Court therefore does not address Defendant NMDPS's arguments concerning duty, breach of duty, and causation.

The NMTCA provides the sole avenue for plaintiffs to bring a state tort action against a governmental entity.  N.M. Stat. Ann. § 41-4-17 ("The Tort Claims Act shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act…."); Schinagel v. City of Albuquerque, No. Civ. 07-481 LH/RLP, 2008 WL 11399538, at *3 (D.N.M. Mar. 18, 2008).   The NMTCA preserves governmental immunity for governmental entities and public employees acting within the scope

of their duties but waives such immunity for eight specific classes of activity enumerated in the NMTCA.  N.M. Stat. Ann. § 41-4-4; see id. §§ 41-4-5 through 41-4-12.

Here, Plaintiffs argue that the immunity waiver contained in Section 41-4-12 of the NMTCA for "law enforcement officer[s]" applies and permits their negligent training and supervision claim to go forward.  See ECF No. 40 at 9-10.  Section 41-4-12 defines "law enforcement officer" as "a public officer or employee vested by law with the power to maintain order [and] to make arrests for crime or to detain persons suspected of or convicted of committing a crime."  Id.

As Defendant NMDPS argues, see ECF No. 29 at 9-10, and Plaintiffs concede, see ECF No. 40 at 10, Defendant NMDPS is not a "law enforcement officer" within the meaning of Section 41-4-12, Ford v. N.M. Dep't of Pub. Safety, 891 P.2d 546, 552 (N.M. Ct. App. 1994) ("The Department [of Public Safety] is not a 'law enforcement officer.'" (quoting N.M. Stat. Ann. § 41-4-12)).  Because Defendant NMDPS is not a "law enforcement officer," Section 41-4-12 does not waive its immunity for claims based on its primary liability, meaning that NMDPS may only be held liable under principles of respondeat superior for the torts of its employees that fall within the scope of Section 41-4-12.  Ford, 891 P.2d at 552-53 (stating that "[t]he Department's immunity is waived by Section 41-4-12 only to the extent that it is liable under principles of respondeat superior").

Here, the Court finds as a matter of law that Count III does not purport to bring a claim against Defendant NMDPS on a theory of respondeat superior.  Respondeat superior is distinct from direct, or primary, liability.  While direct tort liability is based on a defendant's own tortious acts, respondeat superior provides a mechanism for holding defendants liable for the tortious acts of others.  See Restatement (Third) of Torts: Miscellaneous Provisions § 3 (Am. L. Inst. 2023)

("Like other forms of vicarious liability . . . , respondeat superior is distinct from direct liability based upon the defendant's *own* tortious acts."). Count III, which is titled "Negligent Training, Supervision and Retention (Against Defendants City of Deming, Luna County, New Mexico Department of Public Safety and John Does 1 through 9)," alleges in relevant part that Defendant NMDPS owed a duty to the public to adequately train and supervise its law enforcement officers and breached this duty by failing to adequately train and supervise Sergeant Madrid. See ECF No. 1-1 ¶¶ 133, 136. Because Count III is premised on Defendant NMDPS and other governmental entity Defendants' *own* alleged breaches of duty, rather than on these Defendants' *employees'* breaches of duty, it alleges primary liability and not vicarious liability.[5] Id.; see also id. ¶ 138 (alleging that "[t]he breach of this duty by [Defendants City of Deming, Luna County, NMDPS, and John Does 1 through 9] to appropriately train and supervise the law enforcement officers involved in the events described in this Complaint resulted in the unjustified killing of Gilbert Valencia). Because there is no applicable NMTCA waiver for a claim of negligent training and supervision brought directly against a state entity defendant, Defendant NMDPS is immune to Plaintiffs' claim against it in Count III. Consequently, Defendant NMDPS is entitled to summary

---

[5] Plaintiffs argue in response to Defendant NMDPS's Second Motion for Partial Summary Judgment that because "Defendant NMDPS was directly responsible for the training and supervision of New Mexico State Police Sergeant Mark Madrid, . . . , under principles of respondeat superior, NMDPS is liable for torts committed within the scope of Sergeant Madrid's duties." ECF No. 40 at 12. Assuming Plaintiffs proved that Defendant NMDPS was directly responsible for training and supervising Sergeant Madrid, that is a correct statement of law. See Silva, 745 P.2d at 385 (quoting Abalos, 734 P.2d at 799). Plaintiffs' argument nevertheless does not persuade the Court that Count III survives Defendant NMDP's Second Partial Motion for Summary Judgment, for two reasons. First, as explained above, the Court finds that Count III does not purport to bring a claim based on a respondeat superior theory. Second, even if Count III could be read to bring a claim against Defendant NMDPS for the tortious actions of Sergeant Madrid, such claim would be duplicative of Count II, which alleges Defendant NMDPS is liable for the same inactions on the part of Sergeant Madrid as those alleged in Count III. See ECF No. 1-1 at ¶¶ 113-14, 119, 136.

judgment on the claim against it in Count III of the Amended Complaint, and its Second Motion for Partial Summary Judgment should be granted.[6]

## V.    CONCLUSION

For the foregoing reasons, Defendant New Mexico Department of Public Safety's First (ECF No. 28) and Second (ECF No. 29) Motions for Partial Summary Judgment are GRANTED. Defendant New Mexico Department of Public Safety is entitled to judgment in its favor as to Counts II and III.  The Court will enter Final Judgment upon the resolution of the remaining claims in this case.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

[6] In their response to the Motion, Plaintiffs request leave to conduct additional discovery aimed at "explor[ing] the substance of the training provided by NMDPS to, *inter alia*, Sergeant Madrid, as well as the supervisory role NMDPS maintains over NMSP," pursuant to Fed. R. Civ. P. 56(d)(2).  ECF No. 40 at 11.  Because the Court's resolution of Defendant NMDPS's Second Partial Motion for Summary Judgment does not rest on any factual findings concerning the substance of the training provided by Defendant NMDPS to Sergeant Madrid, the Court denies Plaintiffs' request for leave to undertake additional discovery pursuant to Rule 56(d)(2).